IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| NEW WORLD MONTESSORI SCHOOL, | § § § § § § § § § § § | |
| *Plaintiff,* | | |
| | | Case Number: 3:24-cv-00322 |
| v. | | |
| UNITED STATES OF AMERICA; | | |
| *Defendant,* | | |

### ANSWER

Defendant United States of America responds as follows to the allegations contained in Plaintiff's First Amended Complaint (ECF No. 16) ("Complaint") using the same headings as the Complaint but without admitting any allegations contained in any heading.

### I. ADMISSIONS & DENIALS

#### NATURE OF THE CASE

1. *In March 2020, the federal government enacted the CARES Act to aid businesses and individuals in response to the unprecedented public health crisis caused by the COVID-19 pandemic. The CARES Act was passed with large bipartisan support in Congress and was signed into law by President Trump.*

**Answer**: Paragraph 1 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

2. *The CARES Act created the Employee Retention Credit ("ERC") for employers who continued to pay qualified wages to their employees during the height*

of the pandemic in 2020 and 2021. [1] The statute created a tax credit against applicable employment taxes for each calendar quarter in which a business was eligible. See I.R.C. § 3134(a).

**Answer**: Paragraph 2, including footnote 1, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

3.      According to the United States Department of the Treasury, the department to which the Internal Revenue Service ("IRS") belongs, the CARES Act and the Coronavirus Response and Consolidated Appropriations Act of 2021 "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2]

**Answer**: Paragraph 3, including footnote 2, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

4.      Plaintiff, New World Montessori School, qualified for, and applied for, a refund under the ERC program with the IRS. After a lengthy delay, the IRS has failed to process New World Montessori School's claim for an ERC refund. On September 14, 2023, the IRS issued a moratorium on processing ERC claims, effectively disallowing timely submitted ERC claims without review.[3] The IRS has delayed processing ERC claims to such an extent that it has effectively suspended the program.

---

[1] *See* the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), as amended by § 206 and § 207 of the Taxpayer Certainty and Disaster Tax Relief Act (hereinafter the "Relief Act"), enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 3038 (2020) (hereinafter, "Consolidated Appropriations Act"), and American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 8 (2021) (hereinafter, "American Rescue Plan Act") (providing extensions through January 1, 2022).

[2] U.S. Dep't of the Treasury, About the CARES Act and the Consol. Appropriations Act, (last visited Aug. 19, 2024), https://home.treasury.gov/policy-issues/coronavirus/about-the-cares act#:~:text=U.S.%20Department%20of%20the%20Treasury,Search&text=The%20Coronavirus%2 0Aid%2C%20Relief%2C%20and,%2C%20small%20businesses%2 C%20and%20industries.

[3] IR-2023-169, (Sept. 14, 2023).

**Answer**: The United States admits that the IRS has not processed Plaintiff's claim for an ERC refund and that it issued the statement cited in footnote 3 but denies the rest of the allegations in Paragraph 4.

5.  *New World Montessori School brings this lawsuit to obtain the credit it is entitled to receive under the CARES Act.*

**Answer**: The United States lacks sufficient information to admit or deny the allegations in Paragraph 5.

## JURISDICTION & VENUE

6.  *The Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1346, and under 26 U.S.C. (I.R.C.) § 7422.*

**Answer**: United States admits the allegations in Paragraph 6.

7.  *Venue is proper under 28 U.S.C. § 1391(e)(1) and § 1402 because Plaintiff maintains its principal place of business and/or principal office in this district in El Paso, Texas, and a substantial part of the events giving rise to this action occurred in this district.*

**Answer**: The United States admits that Plaintiff has a principal office in El Paso, Texas, but the United States lacks sufficient knowledge or information to form a belief about the rest of allegations in Paragraph 7.

## THE PARTIES

**A.   Plaintiff**

8.  *Plaintiff, New World Montessori School, is a 501(c)(3) organization in Texas with its principal place of business in El Paso, Texas.*

**Answer**: The United States admits the allegations in Paragraph 8.

9.  *Established in 1983, New World Montessori School is a non-profit private school based on the Montessori model of education. It aims to provide quality Montessori education for children two months to twelve years of age. New World Montessori School continued its educational mission in 2020 and 2021.*

3

**Answer**: The United States denies that New World Montessori was established in 1983. The United States lacks sufficient knowledge or information to form a belief about the truth about the rest of Paragraph 9.

**B.     Defendant**

    10.     *The United States of America is the Defendant.*

**Answer**: The United States admits the allegations in Paragraph 10.

BACKGROUND

**A.     Congress drafts the CARES Act in response to the COVID-19 pandemic**

    11.     *In the beginning of 2020, COVID-19 swept through the United States and the federal, state, and local governments issued orders to stem the spread of the disease. Those orders had an expected side effect—they exacerbated the already substantial disruptions to the economy from the pandemic.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 11.

    12.     *In March 2020, the CARES Act was enacted to mitigate the economic fallout from widespread business impairments and job losses.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 12.

    13.     *The ERC program was a significant part of the CARES Act. The ERC program created a tax credit for employers who continued to pay qualified wages, including some health plan expenses, to their employees. See I.R.C. § 3134(c)(3); FS-2020-05 (May 2020); see also U.S. Dep't of the Treasury, Emp. Retention Tax Credit: What You Need to Know, (last visited Aug. 19, 2024), [https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf](https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf).*

**Answer**: Paragraph 13 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

14. *By helping businesses maintain their employees, the ERC program intended to create significant benefits for the country, including lowering enrollments in public assistance programs—like Unemployment Insurance and Medicaid—by people who might lose their jobs.*

**Answer**: Paragraph 14 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

15. *Congress and the President wanted the IRS to widely broadcast the ERC program to American businesses, so they could claim its benefits. The IRS was instructed to conduct a public information campaign about the ERC program to encourage businesses to participate. The CARES Act was amended to require the IRS to work with the Small Business Administration (SBA) to disseminate information about the tax credit.* [4]

**Answer**: Paragraph 15, including footnote 4, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law. The United States lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 15.

**B.   The Employee Retention Credit**

16. *The original CARES Act, signed into law in March 2020, provided a tax credit equal to 50% of qualified wages paid to employees, up to a maximum of $10,000 per employee of qualified wages for the year 2020.*

---

[4] *See* Consol. Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (requiring government "outreach" to business by giving "notice about the credit allowed under this section and the requirements for eligibility to claim the claim"); *see also* U.S. Dep't of the Treasury, *Treasury Encourages Bus. Impacted by COVID-19 to Use Emp. Retention Credit* (Mar. 31, 2020), https://home.treasury.gov/news/press-releases/sm962.

**Answer**: Paragraph 16 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

17.  *In late 2020, the CARES Act was amended to raise the tax credit and extend its duration. The amendment allowed eligible employers to claim 70% of the qualified wages paid with a cap of $10,000 per employee of qualified wages for each calendar quarter.[5] This increased credit was extended to the first and second quarters of 2021, and eventually through the third quarter of 2021.[6]*

**Answer**: Paragraph 17, including footnotes 5 and 6, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

18.  *In sum, an eligible employer could claim a 2020 credit up to $5,000 per employee for the year, and, for 2021, the employer could claim a credit up to $7,000 per employee per quarter.*

**Answer**: Paragraph 18 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

19.  *Unless otherwise excepted, qualified wages are wages and compensation (subject to Social Security and Medicare taxes) paid by an eligible employer to eligible employees and include the eligible employer's qualified health plan expenses that were properly allocable to such wages.*

---

[5] *See* The Relief Act, enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub.L. No. 116-260, 134 Stat. 1182 (2020); *see also* I.R.C. 3134(b)(1)(A-B); *see also* I.R.C. 3134 (b)(2) (citing § 3134(a), with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132)).

[6] The Relief Act § 207 enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (modifying the cap to 70%); The American Rescue Plan Act Pub. L. No. 117-2, 135 Stat. 177 § 3134 (2021) (providing further relief of 70% of a cap of $10,000 for the third and fourth quarters of 2021); Infrastructure Inv. & Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (disallowing the ERC credit for the fourth quarter businesses unless they qualified as a start-up business).

**Answer**: Paragraph 19 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

20.     *The ERC was terminated for most employers in the fourth quarter of 2021 by the Infrastructure Investment and Jobs Act ("Infrastructure Act"). See IR-2021-242 (Dec. 6, 2021). Under the Infrastructure Act, only a recovery startup business may claim the ERC in the fourth quarter of 2021. Id.*

**Answer**: Paragraph 20 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

C.     **Qualifications to Claim the ERC**

21.     *The ERC was available to businesses of many sizes, but an eligible business generally had to meet one of two criteria for a given quarter in 2020 or 2021: (1) a statutorily defined decline in the business's gross receipts when comparing an applicable quarter in 2020 or 2021 with the same quarter in 2019, or (2) the business was fully or partially suspended due to a governmental order during an applicable quarter in 2020 or 2021.*

**Answer**: Paragraph 21 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

   a.     <u>*Decline in Gross Receipts in 2020 and 2021*</u>

22.     *A business qualifies as an "eligible employer" if it suffered a statutorily required reduction in gross receipts in 2020 and 2021, as compared to 2019.  See I.R.C. § 3134(c)(2)(A)(ii)(II).*

**Answer**: Paragraph 22 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

23.     *A qualifying quarter for 2020 is a quarter where the business's gross receipts were 50% less than the same quarter in 2019. See CARES Act § 2301(c)(2)(B). Once an eligible business has a qualifying quarter for 2020, each following quarter in 2020 may also be an eligible quarter, ending with the first calendar quarter following a quarter in which the gross receipts exceed 80% of the gross receipts for the same calendar quarter in 2019*[7]

**Answer**: Paragraph 23, and including footnote 7, contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law. The United States lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 23.

24.     *A qualifying quarter for 2021 is a quarter when the business's gross receipts were 20% less than the same quarter in 2019. See I.R.C. § 3134(c)(2)(A). For 2021, employers may elect into ERC qualification for a calendar quarter by demonstrating a gross receipts reduction of more than 20% in the immediately preceding quarter. See I.R.C. § 3134(c)(2)(A) & (B); see also IRS Notice 2021-49.*

**Answer**: Paragraph 24 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

    b.     <u>Full or Partial Suspension Due to Governmental Orders</u>

25.     *A business **also** qualifies as an "eligible employer" if it "is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for*

---

[7] *IRS Notice 2021-20 (Mar. 1, 2021) ("Section 2301(c)(2)(B)(i) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts begins with the first calendar quarter beginning after December 31, 2019, for which gross receipts (within the meaning of section 448(c) of the Code) for the calendar quarter are less than 50 percent of gross receipts for the same calendar quarter in the prior year. Section 2301(c)(2)(B)(ii) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts ends with the calendar quarter that follows the first calendar quarter beginning after a calendar quarter described in section 2301(c)(2)(B)(i) of the CARES Act for which gross receipts of the employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year.")*

*commercial, social, religious, or other purposes) due to the coronavirus disease of 2019 (COVID-19)." CARES Act § 2301(c)(2)(A)(i); I.R.C. § 3134(c)(2)(A)(ii)(I).*

**Answer**: Paragraph 25 contains statements of law that do not require a response; however, to the extent they require a response, the United States denies that they are a full and complete statement of the law.

**D.     The IRS' Refusal to Apply the CARES Act and Its Moratorium**

26.     *The IRS has decided not to follow the plain text of the CARES Act.*

**Answer**: The United States denies the allegations of Paragraph 26.

27.     *In September 2023, the IRS unilaterally announced it was suspending its review and processing of new ERC claims. See IR-2023-169 (Sept. 14, 2023). "During the ERC review period, the IRS continued to process claims received prior to September 2023. The agency processed 28,000 claims worth $2.2 billion and disallowed more than 14,000 claims worth more than $1 billion." See IR-2024-169 (June 20, 2024). The IRS originally suggested its moratorium would end, and processing would resume, at the beginning of 2024. The IRS did not end the moratorium in 2024. The IRS partially lifted the moratorium for cases filed before January 31, 2024, yet the IRS continues to refuse to adhere to the statute.*

**Answer**: The United States admits that on September 14, 2023, the IRS announced an immediate moratorium on processing new ERC claims to protect honest small business owners from scams. The United States admits that on June 20, 2024, the IRS made an announcement that includes the quote in the second and third sentences of Paragraph 27. The United States admits that on August 8, 2024, the IRS announced that agency would "start judiciously processing claims filed between September 14, 2023, and January 31, 2024." The United States denies that the "IRS continues to refuse to adhere to the statute passed." The United States lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations of Paragraph 27.

28.     *The IRS has claimed that it continues to process claims filed before the moratorium began on September 14, 2023, but it has done so "at a greatly reduced speed . . . ." IR-2023-169 (Sept. 14, 2023). In practice, the IRS has processed very few ERC claims since the moratorium began. The IRS has intentionally stalled the ERC program to such an extent that it has effectively suspended the program altogether.*

**Answer**: The United States admits that the IRS continues to process ERC claims but denies the rest of the allegations of Paragraph 28.

29.     *On June 20, 2024, the IRS issued a news release announcing plans to deny tens of thousands of allegedly improper, high-risk Employee Retention Credit claims while beginning to process low-risk claims. See IR-2024-169 (June 20, 2024).*

**Answer**: The United States admits the allegations in Paragraph 29.

### E.     Plaintiff New World Montessori School qualifies for the ERC under the gross receipts test of the CARES Act

30.     *New World Montessori School qualifies for the ERC under the CARES Act because it suffered a substantial decline in gross receipts for the second quarter (Q2) of 2020 and also qualifies for the ERC for the third quarter (Q3) of 2020. The school also qualifies for the ERC for the first, second, and third quarters (Q1, Q2, and Q3) of 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 30.

31.     *In 2019, New World Montessori School employed seventeen full-time employees, allowing it to qualify as an eligible business for the ERC in both 2020 and 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 31.

32.     *New World Montessori School's gross receipts for Q2 of 2020 were $106,190.34 as compared to $307,136.90 for Q2 of 2019, showing a roughly 65% decline in gross receipts. Under both the CARES Act and the IRS' guidelines, Q2 of 2020 is a qualifying quarter for New World Montessori School because the gross receipts for Q2 of 2020 were less than 50% of the gross receipts for Q2 2019.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 32.

33.   *Section 2301(c)(2)(B)(ii) of the CARES Act provides that New World Montessori School's period during which it can claim a significant decline in gross receipts for 2020 continues until the calendar quarter following the first calendar quarter in which its 2020 quarterly gross receipts are greater than 80 percent of its gross receipts for the same calendar quarter in 2019. [8] Because Q2 of 2020 was a qualifying quarter, New World Montessori School's period of eligibility for the gross receipts test in 2020 does not end until the start of Q4 2020 because Q4 2020 is the quarter following Q3 2020, and Q3 2020 is the first quarter in which the school's quarterly gross receipts are greater than 80 percent of its gross receipts for the same quarter in 2019. As a result, the school also qualifies for the ERC credit in Q3 of 2020.*

**Answer**: The United States admits that Plaintiff has cited federal law in Paragraph 33, including footnote 8, but the United States lacks sufficient knowledge or information to form a belief about the truth of Plaintiff's allegations in Paragraph 33.

34.   *New World Montessori School's gross receipts for Q1 of 2021 were $189,249.69 as compared to $243,713.81 for Q1 of 2019, showing a roughly 22% decline in gross receipts. New World Montessori School's gross receipts for Q2 of 2021 were $240,964.21 as compared to $307,136.90 for Q2 of 2019 showing a roughly 21.5% decline in gross receipts. Under both the CARES Act and the IRS' guidelines, both Q1 and Q2 of 2021 are qualifying quarters for New World Montessori School because the gross receipts for those quarter were less than 80% of the gross receipts for the same quarters in 2019.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 34.

---

[8] *The eligible period for the gross decline in receipts credit is the period "beginning with the first calendar quarter beginning after December 31, 2019 . . . and ending with the calendar quarter following the first calendar quarter beginning after a calendar quarter described in clause (i) for which gross receipts of such employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year." CARES Act § 2301(c)(2)(B)(i–ii).*

11

35. *New World Montessori School's Q3 of 2021 is also a qualifying quarter under the IRS's "alternative quarter election," which permits an employer to "determine if the decline in gross receipts test is met for a calendar quarter in 2021 by comparing its gross receipts for the immediately preceding calendar quarter with those for the corresponding calendar quarter in 2019." IRS Notice 2021-23. IRS Notice 2021-49 clarified that the alternative quarter election was extended to include the third and fourth quarters of 2021, and the IRS provided an example that is nearly identical to the situation here:*

> *As noted in section III.C. of Notice 2021-23, the determination of whether an employer is an eligible employer based on a decline in gross receipts is made separately for each calendar quarter. Thus, employers are not required to use the alternative quarter election consistently. For example, an employer may be an eligible employer due to a decline in gross receipts for the second quarter of 2021 if its gross receipts for the second quarter are equal to 75 percent of its gross receipts in the second quarter of 2019 (i.e., the employer does not rely on the alternative quarter election for the second quarter); the employer could then use the alternative quarter election to be an eligible employer for the third quarter of 2021.*

*IRS Notice 2021-49 (emphasis added). Similarly, New World Montessori School's Q2 2021 is a qualifying quarter due to a 21.5% decline in gross receipts compared to Q2 2019, so the school may use the "alternative quarter election" to be an eligible employer for Q3 of 2021.*

**Answer**: The United States admits that Plaintiff has cited an IRS notice in Paragraph 35 but the United States lacks sufficient knowledge or information to form a belief about the truth of Plaintiff's allegations in Paragraph 35.

### COUNT I: REFUND FOR GROSS-RECEIPTS-DECLINED

36. *Plaintiff, New World Montessori School, incorporates by reference the allegations in Paragraphs 1 to 35 as if fully set forth herein.*

**Answer**: The United States admits that Plaintiff incorporates by reference the allegations but denies the substance of Paragraphs 1 to 35 as alleged in Paragraph 36. The United States also incorporates by reference its Answers to Paragraphs 1 to 35.

37. *Plaintiff is an eligible employer under the CARES Act criteria for 2020 and 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 37.

38.     *Under the gross-receipts-declined test, Plaintiff is entitled to an ERC tax refund for Q2 and Q3 of 2020 and Q1, Q2, and Q3 of 2021, as shown below*

***GROSS RECEIPTS:***

| Year | 2019 | 2020 | 2021 |
|---|---|---|---|
| Q1 | $243,713.81 |  | $189,249.69 *(-22.3%)* |
| Q2 | $307,136.90 | $106,190.34 *(-65.4%)* | $240,964.21 *(-21.5%)* |
| Q3 | $106,666.56 | $193,123.91 ***Eligible via CARES Act § 2301(c)(2)(B)(ii).*** | $136,030.09 ***Eligible via Alternative Quarter Election.*** |

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 38.

39.     *Plaintiff paid qualifying wages to seventeen employees during 2020 and 2021.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 39.

40.     *None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness. Plaintiff excluded from the eligible wages the qualified wages included in the payroll costs reported on any PPP Loan Forgiveness Application.*

**Answer**: The United States lacks sufficient knowledge or information to form a belief about the truth of Paragraph 40.

41.     *Plaintiff made a timely and proper claim for the ERC with the IRS. The following list shows when Plaintiff filed its Form 941-X with the IRS for each qualifying quarter and the ERC it claimed for each quarter.*

    *a. The 941-X for Q2 of 2020 was filed on January 25, 2024, and it claimed an ERC in the amount of $29,294.50 for that quarter.*
    *b. The 941-X for Q3 of 2020 was filed on January 25, 2024, and it claimed an ERC in the amount of $4,071.00 for that quarter.*
    *c. The 941-X for Q1 of 2021 was filed on January 25, 2024, and it claimed an ERC in the amount of $63,781.90 for that quarter.*
    *d. The 941-X for Q2 of 2021 was filed on January 25, 2024, and it claimed an ERC in the amount of $46,927.30 for that quarter.*
    *e. The 941-X for Q3 of 2021 was filed on January 25, 2024, and it claimed an ERC in the amount of $51,313.50 for that quarter.*

**Answer**: The United States admits that Plaintiff made a timely claim for the ERC with the IRS. The United States lacks sufficient knowledge or information whether the ERC claims were "proper."

    a.    The United States lacks sufficient knowledge or information to form a belief about when Plaintiff filed its Form 941-X for Q2 of 2020. The United States received a Form 941-X for Q2 of 2020 on or about March 4, 2024. For Q2 of 2020, the United States admits that Plaintiff claimed an ERC for the following amount: $6,568.22 (nonrefundable) and $22,726.28 (refundable), for a total of $29,294.50.

    b.    The United States lacks sufficient knowledge or information to form a belief about when Plaintiff filed its Form 941-X for Q3 of 2020. The United States received a Form 941-X for Q3 of 2020 on or about March 1, 2024. For Q3 of 2020, the United States admits that Plaintiff claimed an ERC for the following amount: $4,071.00 (nonrefundable) and $0 (refundable), for a total of $4,071.00.

    c.    The United States lacks sufficient knowledge or information to form a belief about when Plaintiff filed its Form 941-X for Q1 of 2021. The United States received a Form 941-X for Q1 of 2021 on or about March 4, 2024. For Q1 of 2021, the United States admits that Plaintiff claimed an ERC for the following amount: $7,289.50 (nonrefundable) and $56,492.40 (refundable), for a total of $63,781.90.

    d.    The United States lacks sufficient knowledge or information to form a belief about when Plaintiff filed its Form 941-X for Q2 of 2021. The United States received a Form 941-X for Q2 of 2021 on or about March 1, 2024. For Q2 of 2021, the United States admits that Plaintiff made an ERC for the following amount: $7,125.58 (nonrefundable) and $39,801.72 (refundable), for a total of $46,927.30.

  e.  The United States lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 41.e.

The United States lacks sufficient knowledge or information to form a belief about the truth of any remaining allegations in Paragraph 41.

  42. *The IRS has failed to process the Plaintiff's valid ERC claim, and, as a result, has not provided the statutorily required refund to Plaintiff.*

**Answer**: The United States lacks sufficient information to admit or deny the allegations of Paragraph 42.

  43. *Under I.R.C. § 6611, the United States owes interest on the refund due to Plaintiff "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Plaintiff overpaid its taxes and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Plaintiff.*

**Answer**: The United States denies that the IRS has "unilaterally refused" to honor any credit to which Plaintiff may or may not be entitled and lacks sufficient information to admit or deny the remaining allegations of Paragraph 43.

  44. *Pursuant to I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. Under I.R.C. § 6532, no suit pursuant to I.R.C. § 7422 shall begin prior to the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.*

**Answer**: The United States admits that Plaintiff has quoted federal statutes in Paragraph 44 but denies that Plaintiff's summary is a complete and accurate statement of the relevant law.

### COUNT II: ATTORNEYS' FEES AND COSTS

  45. *Plaintiff incorporates and realleges paragraphs 1 through 44 above.*

**Answer**: The United States admits that Plaintiff incorporates by reference the allegations but denies the substance of Paragraphs 1 to 44 as alleged in Paragraph 45. The United States also incorporates by reference its Answers to Paragraphs 1 to 44.

46. *Under I.R.C. § 7430(c)(4)(B), the United States must pay litigation and administrative costs because its position is not "substantially justified." The IRS created a self-imposed moratorium on processing ERC claims, and, as a result, has refused to process straightforward claims like those belonging to Plaintiff.*

**Answer**: The United States denies Paragraph 46.

### PRAYER FOR RELIEF

47. *Plaintiff prays for the following relief:*
    a. *A tax refund in the amount of $195,388.20 for the Employee Retention Credit for the following taxable periods: the second and third quarter of 2020 and the first, second, and third quarter of 2021;*
    b. *Reasonable attorneys' fees and costs, as allowed by law;*
    c. *Pre-judgment and post-judgment interest, as allowed by law; and*
    d. *Such further relief as the Court may deem just and proper.*

**Answer**: The remainder of the Complaint is a prayer for relief that does not require a response. To the extent Paragraphs 45.a through 45.d require a response, the United States admits that Plaintiff is seeking certain relief but lacks sufficient information to admit or deny that Plaintiff is entitled to any of the relief requested.

## II. DEFENSES

1. Plaintiff must prove it is statutorily entitled to an ERC credit for the quarters alleged in Paragraph 41 of Plaintiff's Complaint.

2. In this tax refund suit, the Court can redetermine Plaintiff's entire employment tax liability and offset any possible refund amount by any amount otherwise underreported. *See Lewis v. Reynolds*, 284 U.S. 281, 283 (1932).

3. To the extent Plaintiff establishes in this suit it is entitled to any portion of the ERC claimed, under the doctrine of equitable recoupment, Plaintiff would not be entitled to deduct for purposes of income tax for the relevant tax year(s) the amount of wages paid to employees equal to such ERC. The United States requests an offset against any recovery by Plaintiff for the amount of income tax attributable to any such adjustment.

### III.   PRAYER FOR RELIEF

For these reasons, the Government asks the Court to:

A. Enter judgment that Plaintiff is not entitled to any refund; and

B. Provide other relief the Court deems just and proper, including any offset or costs.

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/   Christian A. Orozco*
Christian A. Orozco
Texas State Bar No. 24107886
Trial Attorney – Tax Division
U.S. DEPARTMENT OF JUSTICE
1700 Pacific Avenue, Suite 3700
Dallas, Texas 75201
Phone: 214-880-9757
Fax: 214-880-9741
Christian.A.Orozco@usdoj.gov

Attorneys for the United States of America

<u>Certificate of Service</u>

     The undersigned hereby certifies that a true and correct copy of the foregoing has been served upon all counsel of record by way of electronic filing on December 20, 2024.

                                            <u>/s/   *Christian A. Orozco*</u>
                                            Christian A. Orozco
                                            Trial Attorney, Tax Division